Herbert, J.
On May 26, 1955, the Eastman Kodak Company, as “operator,” entered into an agreement with Buddies Food Service, Inc., as “caterer.” The pertinent portions of this agreement are as follows:
“1. Operator agrees to grant the caterer the exclusive right to operate a general food catering and vending service in its factory located in Findlay, Ohio, for a period of one (1) year from the date of this agreement and continuing thereafter from year to year unless caterer or operator gives notice in writing notifying the other party of its desire to terminate this agreement * * *.
“2. Operator agrees to furnish free of charge to caterer sufficient space to enable caterer to prepare all foods, store supplies, and sufficient space to prepare the food and-to place said food on receptacles for serving.
“3. Operator is to have complete charge of all of the facilities in the factory where said food is consumed, and to have the obligation of furnishing the janitorial services where such food is consumed, and to deliver the dishes and any other articles used in the serving of said food to caterer.
“4. Operator agrees to furnish the space above described, together with all equipment, utilities, janitor service, garbage and rubbish removal.”
*412 Although the lease contract runs from the Eastman Kodak Company to Buddies Food Service, Inc., the appeal was filed by Buddies Lunch System, Inc. We find no explanation in the record for this variation, but, since counsel seein to interchange them in their questions and statements in the record, we make no issue of it here.
It is clear that the appellee is operating a cafeteria at this location. A diagram of the cafeteria is in evidence. The room in which this cafeteria is situated is in the east wing of the building of the plant and is a separate and distinct part of the building extending out from the rest of the plant. The only people served are either the employees of the Kodak Company or their guests.
Appellee contends that by virtue of the contract it controls and operates only that part of the cafeteria on the eastern one-third which contains the refrigerating area, the washing area and the kitchens, the food supplies and the counter where the food is actually delivered to the patrons, claiming to have no control beyond the railing which is situated just beyond the counter where the food is picked up. The testimony is clear to the effect that the employees, after receiving their food, walk to the various tables in the eating part of the room where they consume their meals and then carry their dishes and trays to dirty-dish trucks, one at the west wall and one at the south wall. It is further established that a female employee of the Kodak Company cleans the tables and pushes the dirty-dish trucks to the doors of the scullery, which is in the southeast portion of the kitchen. Janitorial service also is provided by the Kodak Company. Card playing and smoking are permitted in the cafeteria area, whereas they are not permitted in the plant itself. Occasionally, the cafeteria is used for purposes other than eating. It is quite apparent from the evidence, however, that the primary purpose of that room is for cafeteria or restaurant operation, where the employees and their guests consume the food purchased at the counter.
The Kodak Company owns all dishes, silverware, glassware, tables and chairs and all the kitchen equipment. Employees may also bring in their own food and use the facilities of the part *413 of the lunchroom reserved for eating and perhaps buy some of the food at the counter.
The nature of the business of the Kodak Company being what it is, it is quite apparent why this lunchroom should be made the only location where the employees may go when not actively at their work, which accounts for the rules regarding smoking and card playing and eating of their own lunches. The fact remain's that the operation is still a cafeteria or restaurant operation so far as the appellee is concerned. The question simplifies down, therefore, to whether this purchase or sale of food for human consumption is for consumption off the premises where sold.
It is certainly understandable why the Board of Tax Appeals felt itself bound in this case by the decisions in the Castle-berry and Cleveland Concession cases in view of the language at the end of the third paragraph of the syllabus in Castleberry, “in the actual possession or under the actual control of the vendor.” The Tax Commissioner vigorously contends, however, that the facts in the Castleberry and Cleveland Concession cases vary from the facts here. The primary intent of the Sales Tax Act is, of course, to collect the tax from the consumer. The right to collect the tax from the vendor in event of nonpayment of the tax by the consumer is simply to protect the state. In that respect, paragraphs one, two and four of the Castleberry syllabus are pertinent here. In the light of the facts in that case, paragraph three needs no amplification or modification here.
In the case of Merrick v. Ditzler, 91 Ohio St., 256, 110 N. E., 493, the following pertinent statement by Nichols, C. J., is found in the opinion:
“* * * A syllabus is the law of the case establishing principle and doctrine, binding alike on citizens and courts, both inferior and of equal rank. The primary inquiry should be: Are the facts substantially similar? And if not, is the reason that would impel the establishment of the rule of proof the same in the one instance as the other?
“In the case of Admrs. of Gavit v. Chambers and Coats, 3 Ohio, 495, the court say: ‘No maxim of jurisprudence is of *414 more universal application than that where the reason is the same the law should be the same,’ and in the case of Orr v. Bank of the United States et al., 1 Ohio, 36, the old Latin maxim, anglicized, is employed: ‘When the reason of the law ceases the law itself ceases.’
“In the case of Williams v. Roberts et al., 5 Ohio, 35, Hitchcock, J., says: ‘The principal reliance of the counsel for the complainant is upon case of Tiernan v. Beam, etc. As before remarked, we believe that case to have been correctly decided, and we should feel ourselves bound by its authority. But we are unwilling to extend it beyond a case similarly situated.’ ”
This court, likewise, is unwilling to extend the “control” principle of Castleberry and the Cleveland Concession cases to a case such as this where entirely different facts are presented. Here, it cannot be disputed that the primary purpose of the whole operation is to provide restaurant and cafeteria facilities for the employees.
It might also be noted that the necessity for judicial determination of an issue such as presented in this case will not recur in the immediate future, since the General Assembly amended Section 5739.01, Revised Code, effective July 1, 1959, by adding paragraph (L) as follows:
“ ‘Premises’ shall include any real property or portion thereof upon which any person engages in selling tangible personal property at retail and shall also include any real property or portion thereof designated for, or devoted to, use in conjunction with the business engaged in by such person.”
Although there is now a clearly expressed legislative provision encompassing the factual situation presented in this case, it is our conclusion that prior to its enactment sales such as made here were taxable.
In the cases of Roberts v. Bowers, Tax Commr., ante, 99, where a restaurant proprietor was held to be not a manufacturer, and Allen V. Smith, Inc., v. Bowers, Tax Commr, ante, 398, where the process of cleaning a mass of beans by the removal of foreign substances was held not to be manufacturing, this court relied on traditional concepts to reach its conclusions. *415 On the same basis, we hold the appellee liable for the sales tax involved' here and, accordingly, the decision of the Board of Tax Appeals is reversed.

Decision reversed.

Weygandt, C. J., Zimmerman, Taet, Matthias, Bell and Peck, JJ., concur.